**UNITED STATES of America, Petitioner,**

v.

**John D. WITMER, William J. Kelly, and Harsco Corporation, Respondents.**

Civ. A. No. 1:CV–93–1410.

United States District Court,
M.D. Pennsylvania.

Oct. 8, 1993.

---

Michael F. Hertz, U.S. Dept. of Justice, Civil Div., Commercial Litigation Branch, Washington, DC, Michael J. Kane, Asst. U.S. Atty., Harrisburg, PA, Stephen D. Altman, U.S. Dept. of Justice, Commercial Litigation Branch, Civil Div., Dennis L. Phillips, Steven A. Maddox, Frank W. Hunger, Civil Div., U.S. Dept. of Justice, Washington, DC, for U.S.

Laurence W. Dague, Raja G. Rajan, Shumaker & Williams, P.C., Harrisburg, PA, for John D. Witmer.

Marybeth Sullivan, Washington, DC, for William J. Kelly.

Marc G. Tarlow, Kain, Brown & Roberts, York, PA, Daniel G. Jarcho, T. Mark Flanagan, Jr., McKenna & Cuneo, Washington, DC, for Harsco Corp.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are the myriad remaining motions and petitions in this consolidated action. In addition to the motions which were addressed in this court's September 9, 1993 order, the United States has filed a petition to enforce the Civil Investigative Demands ("CIDs") issued to Respondents Witmer and Kelly. Witmer and Kelly have responded to the petition and, subsequent to their response, requested leave to file a supplemental memorandum with respect to the petition. Harsco[1] has filed a petition to set aside the CIDs issued to it, as well as a request for leave to file an additional brief with respect to its petition. The United States has filed a motion to dismiss the Harsco petition, or, in the alternative, for summary judgment. Harsco has moved to strike the government's motion to dismiss. The United States also has filed a cross-petition to enforce the Harsco CIDs. Finally, Witmer and Kelly have filed a motion for reconsideration of a portion of this court's September 9, 1993 order. On September 10, 1993, the court held a hearing on these motions, all of which are now ripe for disposition.

### Background[2]

This case involves a dispute over the issuance and attempted enforcement of several Civil Investigative Demands ("CIDs").

False Claims Act CIDs allow the Department of Justice (hereafter, the "Department") to compel the production of documents and the appearance of individuals for oral examination during a pre-complaint investigation of potential fraud against the government. 31 U.S.C. § 3733. The purpose of the CID is to "enable the Government to determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily." H.R.Rep. 660, 99th Cong., 2d Sess. 26 (1986).

The particular CIDs involved in this case were issued as part of a Justice Department investigation into potential wrongdoing by Harsco Corporation with respect to a vehicle purchase contract with the Army. The CIDs before the court were issued to the Harsco Corporation, John Witmer, a current Harsco employee, and William Kelly, a former Harsco employee.

---

1. Harsco Corporation and one of its unincorporated subsidiaries, BMY Wheeled Vehicles Division, received separate CIDs. The parties have treated the entities as one and the same throughout this litigation and the court will do the same. Accordingly, references to "Harsco" throughout this memorandum and order should be deemed to include Harsco and BMY.

2. Much of the background of this case was set forth in greater detail in this court's memorandum of September 9, 1993. *United States v. Witmer*, 835 F.Supp. 201, 203–204 (1993).

At issue is whether Harsco falsely asserted to the Army that it had not included in its contract bid certain federal excise taxes ("FET") that were due to expire before all of the contract vehicles were delivered. The contract officer rejected Harsco's request for an upward adjustment of the contract price, but the Army Services Board of Contract Appeals ("ASBCA") awarded Harsco the adjustment that it sought.

The propriety of Harsco's bid adjustment is being examined in several fora. First, the Army's request to reopen the Harsco matter before the ASBCA is pending before that tribunal. Second, a grand jury in the Eastern District of Michigan is investigating allegations of criminal wrongdoing arising out of the contract adjustment. Finally, the Justice Department's Civil Division is conducting the instant investigation to determine whether or not to bring a civil fraud action against Harsco under the False Claims Act, 33 U.S.C. § 3729 *et seq.*

Pursuant to this investigation, the Attorney General (Acting Attorney General Stuart Gerson) issued CIDs to Harsco and to various Harsco employees, ordering them to turn over certain information and documents and to submit to oral examinations. *See* 31 U.S.C. § 3733 (authorizing and establishing the procedure for the use of CIDs in False Claims Act cases). In response to the production request, Witmer and Kelly indicated that they had no responsive documents in their possession. However, via letters from counsel, both employees informed the Civil Division that, absent a grant of immunity, they would not appear for their scheduled oral examinations. (*See* Witmer/Kelly Resp. to Gov't Pet. to Enforce, Exs. 6–8.) Further, in their letters, Witmer and Kelly asserted that, if they did appear, they would invoke their Fifth Amendment rights against self-incrimination, rather than answering questions. (*Id.*) Because Witmer and Kelly refused to submit to oral examination, the United States filed actions to enforce the Witmer and Kelly CIDs.[3] Subsequently,

Harsco filed its action to set aside the CIDs issued to it.

The role of the False Claims Act investigator, Lt. Col. Dennis L. Phillips, is the key dispute in the instant proceedings. The False Claims Act requires the Attorney General to designate a false claims law investigator. 31 U.S.C. § 3733(i)(1). This individual serves as the custodian of materials received pursuant to False Claims Act CIDs, ensuring compliance with the provisions of the Act relating to the storage, confidentiality, and return of CID · materials. 31 U.S.C. § 3733(i)(2)–(4).

Respondents object to Phillips' participation in the investigation primarily because of his past and present relationship with the Army. Phillips is an Army officer currently on special assignment to the Justice Department's Civil Division. Prior to his assignment to the Civil Division, Phillips was one of approximately thirty-five attorneys in the Contract Appeals Division of the Army's Judge Advocate General (JAG) Corps. Though Phillips was never assigned to and did not participate in the Harsco case while at the JAG Corps, attorneys in his office prosecuted and lost the Harsco case before the ASBCA. Approximately five months after his arrival at the Civil Division, Phillips was assigned to the Harsco matter. In their various motions and briefs, Respondents assert that Phillips' involvement in the case is improper.

### Discussion

As an initial matter, the court believes that a substantial portion of the motions and briefs filed in these actions have been duplicative and excessive. The issues in the case are limited in number and scope. It is a waste of the parties' and this court's time to be required to sort through reams of motions, cross-motions, and briefs to ferret out the few critical issues in the case.

With the foregoing in mind, the court will focus its attention on the substantive issues that run through all of the motions and briefs

---

**3.** The United States also has moved to enforce CIDs issued to other Harsco employees in courts in the Southern District of Michigan and in the Southern District of Ohio.

and will deal with the side-issues in a cursory fashion.[4]

## I. Harsco Petition to Set Aside Harsco CIDs

The heart of this dispute is whether the various CIDs should be enforced, given the alleged conflict of interest of the False Claims Law investigator, Lt. Col. Dennis L. Phillips. Harsco argues that the CIDs issued to it (and, by implication, those issued to its current and former employees, Witmer and Kelly) should be set aside because of this alleged conflict. Further, Harsco argues that Lt. Col. Phillips should be disqualified from further involvement in the investigation because of the conflict. In addition to the conflict issue, Harsco also argues that the CIDs issued to it exceed legislative limitations on the use of CIDs and are unreasonable and unduly burdensome. These arguments will be addressed *seriatim.*

### A. Lt. Col. Phillips' Alleged Conflict of Interest

Harsco argues that Lt. Col. Phillips' relationship with the Army and actions in this case indicate that he is a partisan in the matter, rather than a disinterested investigator and prosecutor. At the very least, Harsco argues that Phillips' relationship and actions lead to the appearance of partiality and require his disqualification. The United States clearly disagrees, both as to the relevant standard of conduct and as to Harsco's characterization of the relevant facts.

#### 1. The Relevant Standard of Conduct

■ As a general rule, the subject of a government investigation should not be allowed to override the government's choice of investigator or counsel in a case. "It would be particularly inappropriate if in this and other cases, the target of a grand jury subpoena could delay pursuit of crime while it disputed the Attorney General's choice of the lawyer he deemed best fitted to carry on the government's investigation." *In re April 1977 Grand Jury Subpoenas,* 584 F.2d 1366, 1373 (6th Cir.1978) (en banc) (Edwards and Lively, JJ., concurring), *cert. denied, sub nom. General Motors Corp. v. United States,*

440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979). This reasoning equally applies to the government's investigation of civil fraud.

■ Recipients of administrative subpoenas often attempt to "try the prosecutor." *See, e.g., FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1091 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). These dilatory or obfuscatory tactics should not be condoned or encouraged by the courts. *Id.* This is especially true in the context of CIDs which were specifically intended to permit the Justice Department to carry out its pre-complaint investigatory functions in an efficient and cost-effective manner. *See Witmer,* 835 F.Supp. at 205–206, and citations noted therein. Countenancing these tactics would undermine the purposes of the CID scheme, embroiling the Department in large-scale litigation before it has had an opportunity to decide whether or not to actually file suit against the target of the investigation.

At the same time, however, there are instances of actual or potential abuse and/or conflict on the part of a government attorney that the court must not condone. Addressing the situation in which an agency attorney was assigned to conduct a grand jury investigation, the Third Circuit held that, as a general rule, there is no prohibition against assignment of an attorney from one agency to another regarding matters within the jurisdiction of the source agency. "[T]here is no inherent conflict of interest or other impropriety in the appointment of an agency attorney to assist in criminal proceedings before a grand jury." *United States v. Birdman,* 602 F.2d 547, 563 (3d Cir.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). However, the Third Circuit stated that "abuse of an attorney's dual employment status may be shown in particular cases, especially where the agency uses the grand jury investigation to gather information for civil administrative proceedings to which it would not otherwise have access." *Id.*

---

4. The court will grant Respondents' motions for leave to file supplemental briefs and will consid-
er the supplemental materials appended to the requests to the extent that they are relevant.

■ In this case, Harsco argues that Lt. Col. Phillips' function is analogous to that of a prosecutor and that he should be held to the "apparent conflict" standard laid out by the United States Supreme Court in *Young v. United States,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In *Young,* the court held that, at least under certain circumstances, a prosecutor should be disqualified if the facts indicate that there are sufficient "opportunities for conflicts to arise" and a "potential for private interest to influence the discharge of public duty." 481 U.S. at 805–06, 107 S.Ct. at 2136. While the court recognizes some similarities between the function of a CID investigator and a prosecutor, the court does not believe that the *Young* standard applies here.

In *Young,* a private attorney who negotiated the entry of an injunction in a civil case was appointed as special prosecutor in a criminal contempt proceeding based on violation of that injunction. The *Young* court found an apparent conflict of interest because of the potential conflict between the lawyer's duty to the court and his duty to his client. *Id.* The *Young* court was particularly disturbed by the incentives created by this situation. The court noted the danger that a private attorney might use the contempt prosecution for his own private economic gain, compromising the interests of the court in favor of his own financial interests. *Id.* at 804–06, 107 S.Ct. at 2136–37.

For several reasons, this court believes that *Young* is inapplicable to the instant situation. First, *Young* was a criminal prosecution; the investigation being conducted by Lt. Col. Phillips and the ASBCA proceedings are wholly civil matters. Historically, courts have policed the conduct of criminal matters to a much larger extent than civil matters, affording greater protection to individuals subject to criminal proceedings. Further, criminal prosecutors are generally held to higher standards than civil litigants. *Compare* Model Rules of Professional Conduct *with* American Bar Association Project on Standards for Criminal Justice, Standards

Relating to the Prosecution Function. Second, the attorney appointed as prosecutor in *Young* and similar cases [5] was a private attorney. In this case, Lt. Col. Phillips represents the Army, an arm of the United States government. Accordingly, the *Young* court's concern about the attorney's loyalty to his own financial interests and those of other private parties is not brought into play here. *But cf. United States ex rel. SEC v. Carter,* 907 F.2d 484, 488 (5th Cir.1990) (SEC attorney disqualified from prosecuting criminal contempt for violating injunction in civil action in which SEC attorneys intimately involved).

Finally, in *Birdman,* the Third Circuit made clear that "an attorney representing different agencies of the same government is not engaged in the kind of conflict of interest which the drafters of the ABA Standards Relating to the Prosecution Function and the ABA Code [of Professional Responsibility] intended to address." 602 F.2d at 562. This holding is not undermined by the Supreme Court's decision in *Young.* The *Birdman* court recognized that disqualification of an attorney based solely on his association with another agency would "frustrate the congressional policy of intragovernmental cooperation in criminal prosecutions." *Id.* at 563. Here, adoption of Respondents' theory would undermine such interagency cooperation on civil matters.

Based on the foregoing, the court is not persuaded that, for purposes of the instant petition, Lt. Col. Phillips' role is sufficiently akin to that of a prosecutor such that the *Young* standard should govern.

■ At the same time, the court recognizes that a government attorney must be held to a higher standard than a private attorney. A government lawyer "in a civil action or administrative proceeding" is held to a higher standard than a private lawyer, because "government lawyers have 'the responsibility to seek justice,' and 'should refrain from instituting or continuing litigation

---

5. *See, e.g., Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.,* 760 F.2d 698, 704 (6th Cir.1985) (improper to appoint of private attorney in underlying civil litigation as prosecutor in criminal con-

tempt proceeding based on violation of civil injunction), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2480, 96 L.Ed.2d 373 (1987).

that is obviously unfair.'" *Freeport–McMo-Ran Oil & Gas Co. v. F.E.R.C.,* 962 F.2d 45, 47 (D.C.Cir.1992) (quoting Model Code of Professional Responsibility EC 7–14 (1981)).

This court believes that the standard laid out by the Ninth Circuit in *FTC v. American National Cellular,* 868 F.2d 315 (9th Cir. 1989), provides an appropriate middle ground between the *Young* standard and that for a private attorney. The *American National Cellular* court rejected the FTC's contention that government attorneys would always be united in their view of the public interest such that no conflicts would ever arise if an agency attorney were appointed to another agency to prosecute a claim within the province of his or her source agency. Rather, the *American National Cellular* court recognized that, "under certain circumstances, a government attorney may lack the impartiality and appearance of impartiality that our system of justice requires." *Id.*

■ The Ninth Circuit recognized two factors that were relevant to deciding whether an appointment was permissible in a given case. First, whether or not the Justice Department (in that case, the United States Attorney) retained control of the investigation is important because "the prospect of interested decision-making and of the appearance of impropriety is substantially lessened where the U.S. Attorney retains control of the prosecution in which the agency attorneys participate." *Id.* Second, "the extent of the particular agency attorneys' involvement in the underlying civil litigation obviously is relevant in assessing the propriety of their participation as special prosecutors." *Id.*

#### 2. The Alleged Conflict in this Case

■ In light of the factors identified in *American National Cellular,* this court is not persuaded that Lt. Col. Phillips' participation in the Harsco investigation is impermissible. First, regardless of Phillips' participation in the investigation, the Department of Justice retains control over the investigation. In fact, the instant investigation clearly has received the highest level of supervision and review, as the Acting Attorney General himself reviewed and approved the issuance of the Harsco CIDs.

Second, Phillips' participation in the Army litigation with Harsco has been quite limited. Although he recently was asked to assist the Army in determining whether it should file a motion to reopen the ASBCA proceedings, Phillips had no previous involvement in the ASBCA litigation. While he was working in the JAG Corps Contract Appeals Division, Phillips was never assigned to the Harsco matter. Nor was he assigned to the Department of Justice to instigate an investigation of the Harsco matter; the Civil Division's investigation began prior to Phillips' assignment to the Justice Department. Finally, Phillips' assignment to the Civil Division was not intended to give the Army an "inside man" on the Civil Division's Harsco investigation team. Phillips was not assigned to the Harsco investigation until approximately five months after he was detailed to the Civil Division. This assignment change occurred because the lead Justice Department attorney on the investigation voluntarily left the Department. Lt. Col. Phillips' minor role in advising the Army as to whether or not to move to reopen the ASBCA proceedings does not require his removal from the investigation.

However, Harsco cites a number of other grounds and/or "indicia" of conflict which it claims mandate Phillips' removal: (1) Phillips' affiliation with the interested agency and alleged victim; (2) Phillips' alleged improper disclosure to aid the interested government agency; (3) Phillips' alleged improper access to grand jury material; (4) certain alleged "exaggerations of fact," and (5) several other miscellaneous indicia of conflict. The court is not persuaded that these factors indicate an improper conflict.

#### a. Affiliation with the Victim

Harsco claims that Phillips' association with the Army and the JAG Corps means that he is effectively serving two masters, one of whom is the alleged victim in this case. In Harsco's view, the Army and the JAG Corps likely see themselves as "victims" in the case, the Army because Harsco allegedly attempted to defraud it and the JAG Corps

because it was embarrassed by its defeat to Harsco before the ASBCA.

The objectionable connections identified by Harsco include the fact that Phillips has been and remains an Army officer, on the Army payroll and entitled to Army benefits. Harsco further objects to the fact that the Army retains control over Phillips' professional advancement.

The court does not believe that the above contacts make Phillips' involvement in the investigation improper. Were the court to adopt Harsco's view, it would be required to adopt a virtual *per se* rule of disqualification any time an agency attorney detailed to the Department of Justice were assigned to a matter involving his agency of origination. Furthermore, the logic of Harsco's theory might well require the disqualification of retired military personnel who might retain substantial institutional loyalty and friendships, as well as an entitlement to a military pension and medical, commissary and other retirement benefits. The court declines to embark down this road.

### b. Alleged Improper Disclosure

■ Some time after Witmer and Kelly informed the Civil Division that they would not appear for their oral depositions and planned to invoke their Fifth Amendment rights, Phillips' superior in the Civil Division sent the JAG Corps a letter disclosing these facts. From the initials at the bottom of the letter, it appears that the letter was written and typed by Lt. Col. Phillips. Harsco argues that this disclosure was improper and violated the letter and spirit of the CID statute.

The court is not persuaded that the disclosure violated the statute. The statute requires the Civil Division to obtain a court order before disclosing to another agency "documentary material, answers to interrogatories, or transcripts of oral testimony"

gathered pursuant to a CID. 31 U.S.C. § 3733(i)(2)(C). The disclosure at issue clearly did not involve an answer to an interrogatory or a transcript of an oral deposition. Nor was it "documentary material" within the meaning of the CID statute. Respondents themselves notified the Justice Department that they had no "documentary material" responsive to its request for such material. In any event, the CID statute requires that production of such material be made under a sworn certificate by the person to whom the CID was directed. 31 U.S.C. § 3733(f). The statement at issue, contained in a letter from the individual Respondents' counsel to the Justice Department investigators, does not fit within this definition.[6]

### c. Improper Access to Grand Jury Materials

■ Harsco also claims that Lt. Col. Phillips improperly gained access to grand jury materials because of his connections with the Army. As an initial matter, the court would note that the proper place to raise such allegations is before Judge Smith, the judge presiding over the grand jury proceedings in the Eastern District of Michigan. Respondents have made no effort to raise the issue of improper disclosure in that forum. Second, Harsco voluntarily shared with the Civil Division the grand jury material to which Lt. Col. Phillips allegedly improperly gained access. Therefore, Respondents have suffered no harm, and do not claim to be harmed, by the release of material to Lt. Col. Phillips.

Rather, Harsco raises the disclosure issue only in an attempt to show that Lt. Col. Phillips has an impermissible conflict because of his ties to the Army. Apparently, in the course of assisting the Army make a decision whether to request that the ASBCA proceedings be reopened, Lt. Col. Phillips was told of the existence of certain grand jury material which had been turned over to the Army pursuant to a Federal Rule of Criminal Pro-

6. Although not technically prohibited by the statute, the court would caution the Department to act with care in making such disclosures in the future. The CID statute's confidentiality provision is designed to protect a CID recipient from the stigma and public scrutiny engendered by allegations of fraud until the Justice Department has determined that such allegations have suffi-

cient basis to warrant the filing of a civil suit. While the court, therefore, believes that the Department should act with caution in disclosing information to the public or to other agencies, it does not believe that the instant disclosure provides a ground for disqualification of Lt. Col. Phillips.

cedure 6(e) order. The Army's Rule 6(e) order limited disclosure of the materials to JAG Corps attorneys "assigned" to the ASBCA case, "to their supervisors, paralegal and secretarial staff who may assist them and those employees of the Department of the Army who have been or will be assigned to assist said attorneys in the preparation, litigation, appeal, or any civil action concerning this ASBCA case." (Jan. 15, 1993 order, Smith, J., Harsco Petition, Ex. 9.) Rather than risk violating the Rule 6(e) order, however, Lt. Col. Phillips declined to review the grand jury material at that time; instead, he requested that the Civil Division be added to the Rule 6(e) order to ensure that no improper disclosure took place. The court does not believe that this exercise of caution was improper. On the contrary, it indicates that Lt. Col. Phillips is attempting to carry out his duties as False Claims Act investigator in compliance with the dictates of the False Claims Act and other applicable law.

### d. "Exaggerations" of Fact

■ The court has examined the alleged exaggerations of fact identified by Respondents. The court is not convinced that any significant exaggeration has taken place. To the extent that there might be exaggerations of fact in the pleadings submitted on behalf of the United States, the court is not persuaded that they are substantial in nature or that they demonstrate an intent to mislead or deceive the court.

For example, Respondents cite a sentence from a brief submitted on behalf of the government which states that the Civil Division "has 'no information' other than that provided by lawyers representing BMY and other CID recipients about whether there is 'an ongoing grand jury investigation.'" (Harsco Memo. in Support of Pet. at 37.) Harsco insists that this statement constitutes "feigned ignorance" and "implies" that Phillips has had no communication with government attorneys involved in the grand jury investigation. (*Id.*) Respondents opine that "[i]t certainly would be reasonable to expect, however, some communications ... would have occurred." (*Id.* at 37–38.)

Harsco has not persuaded the court that the government's statement was inaccurate,

much less of any real importance. Harsco claims that the statement is not accurate because "*[e]ven though received from Harsco*", two copies of grand jury subpoenas "are direct evidence derived from the grand jury itself." (*Id.* (emphasis added)). On its face, this argument has no merit. If Harsco gave the materials to the Civil Division, they clearly were "provided by lawyers representing BMY and other CID recipients" as the United States contends. Nor do the implications or hypothetical factual scenarios that Harsco abstracts from this argument persuade the court that the United States has acted improperly.

At bottom, Harsco merely disapproves of the government's statement of the relevant facts and the inferences and conclusions that it believes must be drawn from them. This disagreement provides no ground for finding a conflict of interest.

### e. Miscellaneous "Indicia of Conflict"

Harsco identifies several other indicia of Lt. Col. Phillips' alleged conflict. These "indicia" are the same issues raised in Harsco's claim that the Department's use of the CIDs exceeds Congressional authorization. As discussed more fully below, the court has reviewed these allegations and is not persuaded that they are well-founded or indicative of a conflict of interest.

Because the court has not found an impermissible conflict of interest, it will deny Harsco's request to set aside the CIDs and to disqualify Lt. Col. Phillips on this basis.

### B. Legislative Limits on the Use of CIDs

Harsco claims that the Department has exceeded legislative limits on the use of CIDs because (1) the CIDs were issued during the pendency of a grand jury investigation; (2) the issuance of the CIDs was not "necessary"; (3) the CIDs are being used as a discovery tool; and (4) the CIDs were issued to individuals as well as to Harsco itself.

### 1. Issuance During Grand Jury Investigation

■ Harsco argues that the False Claims Act does not allow, and Congress never in-

tended, CIDs to be issued during the pendency of a grand jury investigation into the subject matter of the false claims act investigation. This argument is flawed in that it relies on a citation to the legislative history of the Antitrust CID statute. While, generally, Congress intended the case law and legislative history of the Antitrust CID statute to "fully apply" to the False Claims Act CID statute, S.Rep. No. 345, 99th Cong., 2d Sess. 33 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5298, it obviously did not intend to do so where the language of the two statutes clearly diverges.

Such a divergence exists in this case. While the Antitrust CID permits issuance of a CID "prior the institution of a *civil or criminal* proceeding," 15 U.S.C. § 1312 (emphasis added), the False Claims Act permits issuance of a CID "before commencing a *civil proceeding* " but makes no reference to criminal proceedings. 31 U.S.C. § 3733 (emphasis added). Harsco has presented no evidence to show that the omission of the word "criminal" was due to Congressional error or inadvertence. Without such evidence, it would clearly be improper for the court to presume such error or inattention on the part of Congress. *Avco Corp. v. United States Dep't of Justice*, 884 F.2d 621, 625 (D.C.Cir.1989) ("we . . . cannot presume that Congress intended the same thing where it expressly used different language"). Accordingly, this argument is without merit.

### 2. Lack of Necessity for Issuance of CIDs

 Harsco contends that the CID statute requires that CIDs be issued only when "absolutely necessary." Further, Respondents claim that this court should review the Attorney General's determination that the issuance of the CIDs was absolutely necessary in light of their offer to toll the running of the statute of limitations on any potential civil fraud claims.

As an initial matter, the "absolutely necessary" language relied on by Respondents appears nowhere in the statute; that language is found only in a portion of the legislative history. H.R.Rep. No. 66, 99th Cong., 2d Sess. 26 (1986). The Act itself provides that:

> *Whenever the Attorney General has reason to believe* that any person may be in possession, custody, or control of any documentary information material or relevant to a false claims law violation, the Attorney General may . . . issue in writing and cause to be served upon such person a civil investigative demand.

31 U.S.C. § 3733(a) (emphasis added). While Congress clearly did not intend the CID to be used routinely, the statute does not purport to limit the Attorney General to issuing a CID only when "absolutely necessary."

Nor does the statute give this court plenary authority to substitute its judgment for that of the Attorney General. To the contrary, the statutory scheme appears to leave to the discretion of the Attorney General the decision whether issuance of a CID is necessary.[7] The requirement that the Attorney General herself independently review the matter and authorize the issuance of the CIDs ensures that they are not issued routinely. *Avco Corp.*, 884 F.2d at 627. *Cf.* S.Rep. No. 803, 94th Cong., 2d Sess. 30 (1976) (fact that antitrust CIDs are issued only by the Attorney General or Assistant Attorney General in charge of the Antitrust Division "insures that CIDs receive closer scrutiny and more extensive review than grand jury subpoenas").

Harsco's offer to toll the running of the limitations period for civil fraud claims does not change this analysis. Harsco has cited no case in which a court has held that the Department is obligated to postpone a civil fraud investigation under such circumstances.[8] Such a delay has the potential to prejudice the United States substantially. Over time, as memories fade and witnesses die or otherwise become unavailable, prepa-

---

**7.** Clearly, the court retains authority to determine if the issuance of the CID was procedurally proper.

**8.** As a corporation, Harsco has no Fifth Amendment rights that would be infringed. *Hale v. Henkel*, 201 U.S. 43, 69–70, 26 S.Ct. 370, 377, 50 L.Ed. 652 (1906).

ration of the government's case necessarily would become more difficult.

### 3. Use of CIDs as a Discovery Tool/Issuance to Individuals

Harsco asserts that the CIDs were issued for improper purposes: (1) to serve as *"ex parte* discovery tools" and (2) to get the Fifth Amendment invocations of the individual Respondents on record.

■ First, the court agrees that using the CIDs for a purpose other than to determine if there is sufficient evidence to file suit would be improper. However, the court is not persuaded that the Department is using them for such other purposes. The United States has submitted an affidavit which indicates that it has not yet made a decision whether to file a False Claims Act suit against Harsco. (May 18, 1993 Aff. of Dennis L. Phillips, Brief of United States in Support of Mot. to Dismiss Harsco Pet., Ex. D, ¶ 20.) Harsco has not shown that this assertion was false when made or that, since the affidavit was executed, the Department has made a decision whether or not to file suit.

■ Given the evidence of record, the court does not believe that the government's purpose was other than to obtain relevant information. The fact that the Department has not chosen to grant immunity to the individual Respondents does not compel the conclusion that its purposes are improper. Absent extraordinary circumstances not present here, the United States has no obligation to grant individual CID recipients immunity. *See, e.g., United States v. Morrison,* 535 F.2d 223, 228–29 (3d Cir.1976) (stating general rule but requiring government to request immunity because of prosecutorial misconduct). Certainly, the Department has no obligation to grant such immunity before the individuals have appeared for their oral examination and actually invoked their Fifth Amendment rights. *United States v. Awerkamp,* 497 F.2d 832, 836 (7th Cir.1974) (subpoena recipient required to appear and as-

sert Fifth Amendment right on a question-by-question basis).

In sum, the court finds no merit in Harsco's claim that the United States has exceeded legislative limits on the use of CIDs.

### C. The "Unreasonableness" of the CIDs

To a certain extent, Harsco's claim that the CIDs issued to it are unreasonable and unduly burdensome is moot. After negotiations between the parties, the requested material was divided into three categories. Pursuant to the parties' agreement, the Department has notified Harsco and the court that it no longer seeks documents in the broadest, catch-all category of documents.

■ There is a dispute regarding approximately five filing cabinets of material located at a Harsco plant in Ohio. This material is identified by the Department as "Lee Seitz's estimating materials." [9] Initially, Harsco claims that this material is irrelevant. Clearly, documents requested under a CID must be relevant. 31 U.S.C. § 3733(a)(1); Fed. R.Civ.P. 26(b)(1) (made applicable to CID requests by 31 U.S.C. § 3733(b)(1)(B)). However, the requested documents are relevant to the extent that they may lead to the discovery of admissible evidence and evidence that would inform to the Department's determination whether or not to file a False Claims Act suit against Harsco.

Apparently, at some time after the award of the contract bid to Harsco, Lee Seitz prepared a document in which he stated that Harsco "elected to disguise its profit motives by falsely identifying it as FET." This document, if substantiated, might well lead the Department to conclude that a False Claims Act suit against Harsco is warranted. Harsco claims that the Seitz memorandum is of no value because Seitz did not join Harsco until after the award of the contract at issue in the case. Harsco's contention underscores the Department's need for access to the documents on which Seitz based his conclusion. If Harsco is correct that Seitz's memoran-

**9.** Although Harsco disputes the accuracy of this appellation, the court will use it for the sake of convenience.

dum is worthless, the Department may determine that it has no basis to file a False Claims action. This result would save the government the expense of filing a meritless suit and save Respondents from having to face such a suit. At the time Seitz apparently wrote the potentially inculpatory document, the disputed material was located in five filing cabinets directly outside Seitz's office. Some of the documents in the filing cabinets were prepared by Seitz and the others were accessible to him and may well have formed the basis of his conclusion regarding Harsco's profit motive. Under these circumstances, the court does not have great difficulty in concluding that the documents are relevant to the Department's investigation.

Harsco's claim that production of the Seitz material would be unduly burdensome is equally unpersuasive. The Department has offered to travel to the location of the documents and inspect them on-site. Harsco is a large corporation and production of this limited material would not seriously tax its corporate resources. *See, In re Grand Jury Investigation*, 459 F.Supp. 1335, 1341 (E.D.Pa.1978) (limited cost of complying with grand jury subpoena not significant compared to net worth of company). Nor is the likely cost or inconvenience of producing this material significant in the context of the instant investigation involving an alleged $47 million fraud and a contract under which Harsco has received nearly two billion dollars from the United States government. Thus, production of the Seitz material would not be unduly burdensome. The court will require Harsco to produce the Seitz materials to the Department in the condition they existed when the CIDs were issued.

Harsco also recently discovered several documents that are within the categories of documents that it originally agreed to turn over to the Department. Harsco now refuses to produce these documents. Its only asserted basis for this refusal appears to be

Harsco's belief that it already has produced enough material and should not be required to produce more. This is not an adequate basis for objection. The documents must be produced.

Accordingly, Harsco's motion to set aside the CIDs issued to it must be denied.

## II. Cross–Petition of the United States for Enforcement of Harsco CIDs

The Department has cross-petitioned for summary enforcement of the Harsco CIDs. Particularly, the Department has requested that Harsco be required to produce the above-mentioned Seitz estimating materials and the documents which Harsco initially agreed to turn over but inadvertently withheld. The Department also requests that the court conduct an *in camera* review of eight documents which Harsco claims are protected by attorney-client and/or work-product privilege.

Harsco's opposition to the cross-petition is primarily a rehash of the arguments made in its initial petition.[10] However, in opposition to enforcement, Harsco raises several additional arguments that merit comment.

First, Harsco expends a great deal of effort addressing the appropriate standard of review in this case. A court must do more than "rubber-stamp" the issuance of an administrative subpoena. *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980). Yet, the court's review of an administrative subpoena is extremely limited. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 871 (3d Cir.1990). In *Morton Salt*, the court held that such subpoenas should be enforced if the court determines that "the inquiry is within the authority of the agency, the demand is not too indefinite and the information is reasonably relevant" to the agency's inquiry. *Id.* 338 U.S. at 652, 70 S.Ct. at 369.

---

10. The court already has rejected Harsco's contentions that the CIDs are unenforceable because of the alleged conflict of Lt. Col. Phillips and because they are unduly burdensome, exceed legislative limits on their use, and were issued during the pendency of a grand jury investigation.

Because Harsco's arguments that enforcement of the CIDs would violate its due process rights and would constitute an abuse of the court's process are based on its allegations of an impermissible conflict, they too must be rejected.

In other words, the court must determine whether "the court's process would or would not be abused by enforcement." *SEC v. Wheeling–Pittsburgh Steel Corp.*, 648 F.2d 118, 125 (3d Cir.1981). In the CID context, the Department also must show that it has complied with the specific statutory procedures for issuance of the CID, i.e. issuance by the Attorney General. This level of review provides a CID recipient with his or her "day in court."

Harsco has made the requisite prima facie showing for enforcement of the CIDs. By sworn affidavit, the Department has stated that it is investigating Harsco because it believes that a fraud may have been perpetrated against the Army. The Department has not yet made a decision whether to file a civil action against Harsco and seeks information to determine whether such a suit is warranted. The CIDs were reviewed and issued by the Acting Attorney General. Accordingly, the inquiry is within the authority of the agency and the CIDs appear to have been issued properly. Further, the documents that the Department is now seeking are reasonably relevant to the agency's inquiry and the Department's demand, at least as it stands now,[11] is not too indefinite. Harsco admittedly has failed to produce all of the requested documents.

In addition to the grounds already rejected by the court, however, Harsco alleges several other grounds which it claims would make enforcement of the CIDs an abuse of this court's process.

## A. Authority of Acting Attorney General

■ Harsco asserts that the CIDs are improper because they were issued without the independent review of the Attorney General. This argument is based on the fact that the CIDs were issued by *Acting* Attorney General Stuart Gerson, rather than by a confirmed Attorney General.

As an initial matter, Acting Attorney General Gerson's authority to perform the functions of the Attorney General is uncontroverted. Title 28 U.S.C. § 508(a) authorizes the Deputy Attorney General to act in the absence or disability of the Attorney General. This provision grants the Deputy so acting the power to assume *all* of the responsibilities and duties of the Attorney General.[12] Section 508(b) authorizes the Attorney General to establish a further line of succession to fill a vacancy in the office of Attorney General. The Attorney General has done so and has included the Assistant Attorney General in charge of the Civil Rights Division in the order of succession. (*See* Dep't of Justice Order 1259–88, United States Reply in Support of Summary Enforcement, Ex. C.)

Prior to the inauguration of President Clinton, Mr. Gerson was the Assistant Attorney General in charge of the Civil Division. When Attorney General Barr and several other high level Department of Justice officials resigned from office, Mr. Gerson became the Acting Attorney General. (*See* January 19, 1993 Memorandum to Mr. Gerson, *Id.*, Ex. D.) Accordingly, at that time, Mr. Gerson assumed all the powers and responsibilities of the Attorney General. He was exercising those powers when he issued the instant CIDs.

The court finds no support for Harsco's argument that Congress intended the CID statute to carve out an exception to this blanket grant of power to the Acting Attorney General. First, Congress nowhere stated such an intention. Second, given Congressional concern with the problem of fraud against the government, it is unlikely that Congress would have adopted a rule which would halt a CID investigation every time a confirmed Attorney General left office.

Harsco relies almost exclusively on a case that is clearly inapposite. *Moog, Inc. v. United States*, 1991 WL 46518, 1991 U.S.Dist. LEXIS 13,364 (W.D.N.Y.1991). In *Moog*, the district court held invalid a CID

---

**11.** The court expresses no opinion as to the definiteness or reasonableness of the government's initial demand under the CIDs.

**12.** "In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise *all* the duties of that office." 28 U.S.C. § 508(a) (emphasis added).

signed by then-Deputy Attorney General William Barr as "Acting Attorney General." In that case, however, the confirmed Attorney General, Richard Thornburgh, was still in office. Deputy Attorney General Barr signed the CIDs pursuant to a standing policy which routed to the Deputy Attorney General matters posing a potential conflict of interest for the Attorney General. The *Moog* court held that the statutory provision allowing the Deputy Attorney General to act as "Acting Attorney General" contemplated the Attorney General's complete inability to perform the functions of his office, not "selective disability" due to a conflict on a particular issue. The *Moog* court was particularly disturbed that, under the Attorney General's policy for dealing with conflicts, the screening and re-routing of matters to the Deputy Attorney General was handled completely by subordinate departmental employees without the knowledge of the Attorney General himself. The court found this practice to be at odds with the Congressional mandate that the Attorney General personally review the case before issuing a CID.

In this case, Attorney General William Barr and the other Department of Justice officials ahead of Mr. Gerson in the order of succession had resigned from office before issuance of the instant CIDs. Attorney General Barr's resignation created exactly the type of vacancy anticipated by 28 U.S.C. § 508(a). Thus, Mr. Gerson was Acting Attorney General for all purposes and, accordingly, was entitled to perform all functions of the office of Attorney General, including the issuance of CIDs. Harsco's arguments to the contrary are unpersuasive.

Nor is there any support for Harsco's argument that the Attorney General herself must review and/or file a petition to enforce a CID. The only portion of the False Claims Act CID statute which prohibits the Attorney General from delegating responsibility under the Act is the section which requires that she herself review and issue the CIDs. 31 U.S.C. § 3733(a)(1). There is no such limiting language in the section authorizing the

institution of judicial proceedings to enforce a CID. 31 U.S.C. § 3733(j).

## B. Government Request for *In Camera* Inspection of Allegedly Privileged Documents

The United States has requested that this court order certain documents be delivered to the court for *in camera* inspection to determine whether Harsco' claim of privilege is justified. There are eight documents in question. Harsco objects to the Department's request.

### 1. Crime–Fraud Exception Documents

■ The Department asserts that four of the documents should be produced for inspection to see if the crime-fraud exception applies.[13] The crime-fraud doctrine is an exception to the attorney-client privilege. Its purpose is "to assure that the 'seal of secrecy' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (internal citations omitted).

In *Zolin*, the United States Supreme Court set forth the preliminary showing that must be made by a party requesting *in camera* review of documents allegedly subject to the crime-fraud exception:

> Before engaging in *in camera* review to determine that applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*Id.* at 572, 109 S.Ct. at 2631 (internal quotations omitted). This preliminary showing for *in camera* review "implicates a much more lenient standard of proof than the determination to apply the crime/fraud exception" because "the intrusion on the asserted privilege

**13.** The documents which the Department alleges may be covered by the crime fraud exception are (as identified by the Department): Number 2 (Bates Number 150597–607); Number 3 (Bates Number 2501545–555); Number 4 (Bates Number CID3502015–021); and Number 5 (Bates Number 2501536–542).

is minimal." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 96 (3d Cir.1992)

 Once the initial showing is made, the decision whether to grant *in camera* review "rests in the sound discretion of the district court." *Zolin*, 491 U.S. at 572, 109 S.Ct. at 2631. This discretion should be informed by "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish the claim that the crime-fraud exception applies." *Id.*

 In this case, the court believes that *in camera* production of the documents alleged to be relevant to the crime-fraud exception is appropriate. The Department has reason to believe that between April 14, 1986 and April 23, 1986, BMY made a decision to defraud the government with respect to the inclusion of the FET in its bid. Documents such as the Seitz memorandum lend credence to this allegation. Thus, a reasonable person acting in good faith would have reason to believe that the cited documents may reveal evidence to establish the applicability of the crime-fraud exception.

The circumstances also warrant the court exercising its discretion to review the documents in this case. The documents alleged to be relevant to the crime-fraud exception are very limited in number and, if the crime-fraud exception is found to apply, these documents could prove critical to the government's case. The court will require these documents to be produced for *in camera* inspection.

### 2. Waiver and Other Arguments

The Department claims that any applicable privilege may have been waived with respect to four documents because of disclosure to certain unidentified employees.[14] In its privilege log, Harsco identified each of these documents as having been circulated to Harsco employees "with need to know." The Department claims that, without an identification of the individuals to whom the documents were disclosed and their positions and reasons for needing to know the information contained in the documents, it has no way of testing Harsco's claim of privilege. This court agrees. However, rather than ordering the documents produced *in camera*, at this time the court would only require that Harsco provide the Department with the above information so that the government will have an opportunity to evaluate the claim of privilege.

For various other reasons, the Department also asserts that certain other documents should be produced for *in camera* inspection. The Department claims that documents number one (Bates Number 2500854–855), seven (Bates Number 2500830) and eight (Bates Number CID3502022) must be produced because they are drafts of documents which are discoverable in their final form. However, the Department has provided no legal support for this argument. Further, if the government's contention is valid, the appropriate remedy would be disclosure to the Department, rather than *in camera* inspection. The court will deny the Department's request for production of these documents without prejudice to the Department to renew its request with adequate legal support.[15]

### C. Conclusion

In sum, the Department has made a prima facie case for the enforcement of the Harsco CIDs. The court does not believe that enforcement of the CIDs would constitute an abuse of its process. Accordingly, the cross-motion of the United States to enforce the

---

**14.** The Department argues a potential waiver of privilege with respect to the following documents: Number 4 (Bates Number CID3502015–021); Number 5 (Bates Number 2501536–542); Number 6 (Bates Number CID3502014); and Number 8 (Bates Number CID3502022).

**15.** If it intends to preserve its alternative argument with respect to the non-privileged attachments to documents two and three, the Department also should explain why the attachments would not be covered by the work-product doctrine.

Harsco CIDs will be granted to the extent indicated above.[16]

## III. Motion of the United States to Dismiss Harsco Petition or for Summary Judgment/Harsco Motion to Strike

The United States has filed a motion to dismiss or for summary judgment with respect to Harsco's petition to set aside the CIDs. In the context of this case, this motion serves little purpose other than as an additional opposition to Harsco's petition. The court will treat it as such. Harsco's motion to strike will be granted and the motion of the United States to dismiss the Harsco petition will be converted to an opposition on the merits.

## IV. Witmer and Kelly Motions to Strike

Respondents Witmer and Kelly filed separate motions to strike the Department's *ex parte* petitions to enforce the Witmer and Kelly CIDs or, in the alternative, for an extension of time to respond to the Department's enforcement petitions. These motions were premised on the fact that Respondents would be prejudiced were the petitions granted *ex parte*, without giving Respondents adequate notice and opportunity to object to enforcement. In orders dated June 22 and 23, 1993, Respondents were granted the extensions they sought, with the court deferring consideration of their motion to strike.

At this point, all parties to this action have had more than ample opportunity to brief the issues in the case and to argue before the court at an enforcement hearing. Even assuming *arguendo* that the Department's chosen procedure was improper,[17] Respondents have suffered no prejudice from the *ex parte* filing of the petitions. Therefore, Respondents' motion to strike the petitions will be denied.

## V. Petitions of the United States to Enforce Witmer and Kelly CIDs

■■■ For the reasons articulated above, the court finds that the Department has established a prima facie case for enforcement of the Witmer and Kelly CIDs. The Department investigation of Harsco centers on a contract worked on by both Witmer and Kelly, current and former Harsco employees, respectively. At the time the contract was put out for bid, Witmer was Harsco's manager in charge of tax compliance. In April of 1986, Witmer apparently prepared a memorandum indicating that Harsco had included the disputed tax in its contract bid. At the time, Kelly was Harsco's Vice President in charge of tax matters and Witmer's superior. These individuals clearly were in a position to have information relevant to the Department investigation.

Witmer and Kelly object to the enforcement of the CIDs issued to them primarily on the same grounds as those articulated by Harsco. To the extent that Witmer and Kelly's arguments mirror those of Harsco, the court finds them to be without merit.

Witmer and Kelly raise several other arguments not squarely raised by Harsco. First, Witmer and Kelly argue that the issuance of the CIDs during the pendency of a grand jury investigation into the same conduct unduly burdens their Fifth Amendment rights and is fundamentally unfair.

■■■■ As a general rule, subjecting an individual to simultaneous criminal and civil investigations does not violate the Constitution. "The Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of

---

**16.** Because it has found for the United States on the merits of its claim, the court need not address its argument that Harsco waived its right to challenge enforcement of the CIDs.

**17.** The court expresses no opinion on the propriety of the Department's *ex parte* filing.

substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable.

*Id.* at 1374. Nor does the Constitution prohibit adverse inferences against a civil litigant who refuses to testify in the civil action. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367, 384–85 (6th Cir.1993) ("In a civil case, a party's invocation of the privilege against compulsory self-incrimination gives rise to a legitimate inference that the witness was engaged in criminal activity") (citing *Baxter,* 425 U.S. at 318, 96 S.Ct. at 1558; J.H. Wigmore, 8 Evidence In Trials At Common Law § 2272, at 439 (McNaughten rev. 1961 & Supp.1991)).

However, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action.' " *Dresser,* 628 F.2d at 1375. A court is less likely to grant such a stay prior to indictment, however. *In re Par Pharmaceutical, Inc. Sec. Litig.,* 133 F.R.D. 12, 13–14 (S.D.N.Y.1990).

In this case, further delay in the enforcement of the CIDs would not serve the interests of justice. At this point, no civil suit has been instituted; nor is it certain that such a suit will be brought. Even if suit is brought, it is not clear that Witmer or Kelly themselves would be made defendants. The Department's investigation appears to be focused on the improprieties of BMY and Harsco, not the individual employees. The Department should not be forced to delay any further a preliminary investigation to determine whether or not to file a civil fraud suit.

Respondents' argument that the CIDs fail to state the general nature of the testimony sought and because they were issued for an improper purpose are without merit. The CIDs specify the subject matter of the demand with sufficient particularity. *See United States v. Seitz,* No. MS2–93–063, slip op. at 16–18, 1993 WL 501817 (S.D.Ohio Aug. 25,

1993). The Department has submitted an affidavit stating that its purpose in issuing the CIDs was to obtain information to enable it to decide whether to file a False Claims Act suit. The court is not persuaded by Respondents' attempted rebuttal of this statement.[18]

Because the court finds no merit in Respondents' objections to enforcement of the CIDs, Respondents will be required to comply with them.

## VI. Witmer and Kelly Motion for Reconsideration

Witmer and Kelly have requested that this court reconsider that portion of its September 9, 1993 order which struck their reply to their discovery motion. On July 23, 1993, the Department filed a motion to strike Witmer and Kelly's reply to their motion to strike the government's *ex parte* petitions to enforce the CIDs. In its September 9, 1993 order, this court struck Respondents' reply to the discovery motion, instead of their reply to their motion to strike the government's *ex parte* petitions to enforce the CIDs.

This court is of the opinion that there is ample ground for striking Respondents' reply to the discovery motion. However, the court normally does not strike briefs without a request to do so or without affording the party who submitted the brief an opportunity to respond to the motion to strike. Accordingly, the court will vacate that portion of its September 9, 1993 order which struck Respondents' reply to the discovery motion.

Respondents have not requested that this court reconsider that portion of its prior opinion which denied Respondents' motion for leave to serve discovery. However, for the sake of completeness, the court will do so briefly.

In sum, having considered the allegations in Respondents' discovery reply brief, the court does not believe that discovery is warranted in this case. In its September 9, 1993 memorandum, this court outlined the stan-

---

**18.** Because the United States has not yet indicated that it will seek to compel Respondents' testimony pursuant to 18 U.S.C. § 6001 *et seq.,* this court need not address Respondents' assertion that, if the government attempts to compel their testimony, they would be entitled to grand jury transcripts.

**226**

dard Respondents were required to meet to obtain even limited discovery. "[B]efore Witmer/Kelly will be permitted even limited discovery, they must make a *substantial* and *supported* showing that enforcement of the subpoena would work an abuse of the Court's process." *Witmer,* 835 F.Supp. at 207.

In their reply, Respondents allege four "abuses". Two of the arguments, those related to issuance by the Acting Attorney General and to the "absolute necessity" requirement for issuance of the CIDs, are purely legal issues which merit no discovery in any event. With respect to the other two arguments, regarding Lt. Col. Phillips' alleged conflict of interest and the allegedly improper purpose for issuance of the CIDs, this court does not believe that Respondents have made a substantial and supported showing that enforcement of the CID would constitute an abuse of this court's process. The court has rejected Respondents' contentions with respect to the conflict and improper purpose issues on the merits and the court is not persuaded that further discovery will produce any additional relevant evidence to change that conclusion.

Therefore, while the court will grant Respondents' motion for reconsideration and reinstate their reply brief related to the discovery motion, the remainder of this court's September 9, 1993 order will remain unchanged.

An appropriate order will be issued.

### ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

(1) Harsco's and Witmer and Kelly's respective motions for leave to file supplemental briefs are **GRANTED.**

(2) Harsco's petition to set aside the Harsco CIDs is **DENIED.**

(3) Harsco's motion to strike the motion of the United States to dismiss and/or for summary judgment is **GRANTED.** The government's motion to dismiss is converted into an opposition on the merits.

(4) The cross-motion of the United States to enforce the Harsco CIDs is **GRANTED** in part:

(a) On or before November 8, 1993, Harsco shall make available for inspection and copying the five filing cabinets of material identified in the attached memorandum as the Seitz estimating material. This material shall be produced as it existed at the time the Harsco CIDs were issued.

(b) On or before October 22, 1993, Harsco shall produce all documents that it previously agreed but inadvertently failed to produce.

(c) On or before October 22, 1993, Harsco shall produce to the court for *in camera* inspection documents identified in the government's request as Number 2 (Bates Number 150597–607); Number 3 (Bates Number 2501545–555); Number 4 (Bates Number CID3502015–021); and Number 5 (Bates Number 2501536–542).

(d) On or before October 22, 1993, Harsco shall provide to the Department of Justice the names and positions of the individuals to whom documents Number 4 (Bates Number CID3502015–021); Number 5 (Bates Number 2501536–542); Number 6 (Bates Number CID3502014); and Number 8 (Bates Number CID3502022) were circulated and the basis for those persons need to know the contents of the document.

(e) In the event that Harsco discovers any undisclosed material within the categories of documents that it previously agreed to turn over to the Department of Justice or should Harsco determine that there is no longer a basis for assertion of a privilege with respect to a document previously believed to be privileged, Harsco shall produce such material to the Department immediately.

(f) If the Department still intends to seek access to documents number one (Bates Number 2500854–855), seven (Bates Number 2500830) and eight (Bates Number CID3502022), on or before October 28, 1993, it shall submit any case law in support of its argument that the documents are not privileged. Harsco shall respond

in accordance with local rules for briefing motions.

(5) The Witmer and Kelly motions to strike the petitions of the United States to enforce the CIDs issue to them are **DENIED.**

(6) The petitions of the United States to enforce the Witmer and Kelly CIDs are **GRANTED.**

> (a) On or before October 29, 1993, or at such later time as both parties may specify in writing, Respondents Witmer and Kelly are ordered to submit to an oral examination as specified in CID Nos. 91–09 and 91–13, respectively.

(7) Witmer and Kelly's motion for reconsideration is **GRANTED.** That portion of this court's September 9, 1993 order which struck Witmer and Kelly's reply their discovery motion is **VACATED** and the reply brief is reinstated. The government's motion to strike the reply to Respondents' motion to strike the government's enforcement petitions is **DENIED.** The remainder of this court's September 9, 1993 order remains in force.